UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSEPH MICHAEL DWYER,

      Plaintiff,

  v.                                 No. 12-C-328

KARL SIMANDL and VILLAGE OF
SHOREWOOD,

      Defendants.

**DECISION AND ORDER DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On April 4, 2012, the plaintiff, Joseph Michael Dwyer ("Dwyer"), filed a *pro se* complaint against Officer Karl Simandl ("Officer Simandl" or "Simandl") and his employer, the Village of Shorewood (the "Village"), alleging federal constitutional violations, pursuant to 42 U.S.C. § 1983, as well as violations of state law in connection with Dwyer's arrest two years earlier. On January 31, 2013, the defendants filed a motion for summary judgment, which was amended on February 7, 2013. In conjunction with their reply brief, on May 20, 2013, the defendants filed a motion to strike two documents attached to Dwyer's response to the motion for summary judgment. For the following reasons, the motion to strike will be denied as moot, and the motion for summary judgment will be granted.

**I. PRELIMINARY MATTERS**

Before turning to the facts, the court must decide whether to grant the defendants' motion to strike two documents attached to Dwyer's response to the motion for summary judgment. The documents are purportedly an email and a memo from Dwyer's friends who witnessed his arrest. The documents

are neither in the record nor identified by an affidavit or declaration, so their submission was improper under Federal Rule of Civil Procedure 56. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (stating that, on summary judgment, a court may consider "properly authenticated and admissible documents or exhibits") (citing *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985)). Dwyer was aware of the rule because, in accordance with Civil L.R. 56(a), the defendants sent him the text of Federal Rule of Civil Procedure 56(c), (d), and (e).

Having said that, the inadmissible testimony would not affect the court's decision on the defendants' motion for summary judgment. The documents merely corroborate Dwyer's account of the events, which, even standing alone, can prevent summary judgment despite being "self-serving" in nature. *See Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). Accordingly, the defendants' motion to strike will be denied as moot.

One of the defendants' submissions, however, must be disregarded. The defendants filed a document titled "Defendants' Reply to Proposed Findings of Fact," which lists objections to Dwyer's responses to the defendants' proposed findings of fact. Civil L.R. 56(b)(3)(B), however, only authorizes a reply "to any *additional* facts submitted by the opposing party." (Emphasis added.) As the defendants point out, Dwyer did not submit any additional facts. So the defendants' reply was improper. *See generally Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (reaffirming a court's broad discretion to require strict compliance with local rules). Still, to the extent that Dwyer's responses to the defendants' proposed findings of fact were improper (for example, by attempting to revise the fact with additional information), the court will disregard them.

## II. FACTS

On April 4, 2010, at approximately 10:30 p.m., Dwyer and two of his friends, Marianne Baik ("Baik") and Ryan Wolf ("Wolf"), were on the grounds of Lake Bluff Elementary School in the Village of Shorewood. (Plaintiff's Responses to Defendants' Proposed Findings of Fact ("Pltf. Resp. PFOF") ¶ 4.) Wolf is a large man, well over six feet tall. (Pltf. Resp. PFOF ¶ 77.) Dwyer and Wolf had bottles of alcohol in their possession. (Pltf. Resp. PFOF ¶ 5.) As a result, Dwyer was in violation of two Village ordinances (409-14 and 335-1) governing unauthorized presence on school property and possession of alcohol on school premises, respectively. (Pltf. Resp. PFOF ¶¶ 6-9.)

Officer Simandl, who was conducting a security check of the grounds in a Village of Shorewood squad car, saw the group and drove over to investigate. (Pltf. Resp. PFOF ¶¶ 10-12.) The squad car had no working video camera or microphone. (Pltf. Resp. PFOF ¶ 66.) As the group began to walk away, Simandl approached them and asked for identification. (Pltf. Resp. PFOF ¶¶ 13-15.) Upon seeing the bottles, Simandl decided to arrest Dwyer and Wolf for possession of alcohol on school grounds. (Pltf. Resp. PFOF ¶¶ 16-17.) Simandl handcuffed Dwyer and guided him towards the squad car; then, Simandl instructed Dwyer to face the car and spread his feet. (Pltf. Resp. PFOF ¶¶ 18-19.) At some point, Simandl also instructed the other two individuals to remain in an area where he could see them. (Pltf. Resp. PFOF ¶ 78.)

Officer Simandl started to search Dwyer, which Dwyer protested. (Pltf. Resp. PFOF ¶ 20.) According to Simandl, Dwyer exhibited physical as well as verbal resistence; Dwyer, however, asserts that he only verbally protested Simandl's actions. (Defendants' Proposed Findings of Fact ("Def. PFOF") ¶ 21; Pltf. Resp. PFOF ¶ 21.) Dwyer began yelling and swearing at Simandl. (Pltf. Resp. PFOF ¶ 22.) Simandl attempted to stabilize Dwyer against the squad car and later decided to use a "controlled

3

descent" tactic on Dwyer. (Pltf. Resp. PFOF ¶¶ 24, 26.) A "controlled descent" maneuver is a trained technique in which a police officer falls to the ground with a subject to avoid injury. (Pltf. Resp. PFOF ¶ 27.) Dwyer alleges that he suffered ripped jeans and skinned knees as a result of the takedown, but he incurred no medical bills due to the incident. (Pltf. Resp. PFOF ¶¶ 28, 63.) Simandl did not strike or hit Dwyer, nor did he use any department-issued tools. (Pltf. Resp. PFOF ¶ 29.)

Once on the ground, Officer Simandl again attempted to stabilize Dwyer by placing one of his knees in Dwyer's shoulder blade region so he could observe the two other people. (Pltf. Resp. PFOF ¶ 30.) Throughout this time period, Simandl ordered Dwyer to stop resisting. (Pltf. Resp. PFOF ¶ 31.) Simandl made a radio call for backup because of Dwyer's resistance and because Simandl needed to monitor Wolf and Baik. (Pltf. Resp. PFOF ¶¶ 32-33.) When the backup officers arrived, Dwyer, Wolf, and Baik were taken into police custody and transported to the police station. (Pltf. Resp. PFOF ¶ 36.)

At the police station, Dwyer was placed in a cell and advised by a sergeant as to why he had been arrested. (Pltf. Resp. PFOF ¶¶ 40-41.) Dwyer was generally uncooperative with Simandl during the booking process, so at one point, Simandl used his hands to guide Dwyer into the holding cell without striking Dwyer. (Pltf. Resp. PFOF ¶¶ 44-45.) Dwyer requested that another police officer complete the booking process, and his request was granted. (Pltf. Resp. PFOF ¶¶ 46-47.) Dwyer was issued two municipal citations for possession of alcohol on school grounds and for resisting/obstructing. (Pltf. Resp. PFOF ¶¶ 48-49.) Wolf and Baik were also each issued a citation. (Pltf. Resp. PFOF ¶¶ 37-38.) The total time from when Simandl first approached the group until their release was about two hours. (Pltf. Resp. PFOF ¶ 74.)

After the incident, Officer Simandl prepared a written report, which was accompanied by a supplemental narrative from another officer. (Pltf. Resp. PFOF ¶¶ 50-51.) Dwyer alleges that this report

4

was improperly sent to the FBI but testified that he does not "know for a fact that [the Village] gave something to the FBI," nor does he have evidence supporting this claim. (Pltf. Resp. PFOF ¶¶ 64-65; Dwyer Dep. at 66:8-21.) At some point between April 4 and October 4, 2010, Dwyer mailed a document titled "Notice of Injury" to the Village of Shorewood police department; he did not, however, serve the Village clerk with an itemized claim for damages. (Pltf. Resp. PFOF ¶¶ 55-56.)

Dwyer entered into a stipulation with the Village of Shorewood in which the alcohol citation was amended to a citation for unauthorized presence on school grounds, and the resisting/obstructing citation was dismissed. (Pltf. Resp. PFOF ¶¶ 52, 54.) Dwyer pleaded no contest to the unauthorized presence citation and was found guilty by the Village municipal court. (Pltf. Resp. PFOF ¶ 53.) Dwyer later testified that he has no evidence that he has been viewed differently or denied employment because of the April 4, 2010, incident. (Pltf. Resp. PFOF ¶¶ 69-71.) Rather, Dwyer obtained his law license from the State of Illinois and has been employed since the incident. (Pltf. Resp. PFOF ¶¶ 72-73.)

As previously discussed, on April 4, 2012, Dwyer commenced the instant action. He brings federal constitutional claims of: (1) false arrest, (2) improper search, and (3) excessive force. (Pltf. Resp. PFOF ¶ 59.) He also brings state law claims of: (1) assault and battery, (2) false imprisonment, (3) negligent arrest, and (4) defamation. (Pltf. Resp. PFOF ¶ 58.) Finally, Dwyer seeks relief for miscellaneous claims of: (1) destruction of evidence and (2) improper reporting to the FBI. (Pltf. Resp. PFOF ¶ 60.)

### III. SUMMARY JUDGMENT STANDARD

A district court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome

5

of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). A party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). But a mere "scintilla of evidence" in support of the nonmovant's position is insufficient. *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

6

## IV. DISCUSSION

To repeat, Dwyer brings federal constitutional claims of: (1) false arrest, (2) improper search, and (3) excessive force; state law claims of: (1) assault and battery, (2) false imprisonment, (3) negligent arrest, and (4) defamation; and miscellaneous claims of: (1) destruction of evidence and (2) improper reporting to the FBI. Despite Dwyer's allegations to the contrary (Pltf. Resp. at 8), the defendants have presented arguments for summary judgment in their favor on all claims. The court will address each claim in turn.

**A. Federal Constitutional Claims**

The defendants seek summary judgment regarding Dwyer's federal claims primarily based on qualified immunity. Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To overcome the defendant's invocation of qualified immunity, the plaintiff[] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). The court may address either prong of the qualified immunity analysis first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**1. False Arrest**

Dwyer claims that Officer Simandl effectuated an unlawful arrest. "The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." *Abbott*, 705 F.3d at 713-14. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable,

prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714. In determining whether probable cause is present, "the officer's subjective state of mind and beliefs are irrelevant." *Id.*

Wis. Stat. § 800.02(6) provides that "[a] person may be arrested without a warrant for the violation of a municipal ordinance if the arresting officer has reasonable grounds to believe that the person is violating or has violated the ordinance." The Wisconsin Supreme Court has specifically held that this provision does not violate the state or federal Constitution. *City of Milwaukee v. Nelson*, 439 N.W.2d 562, 572 (Wis. 1989). While Dwyer correctly asserts that the law extends more favor to arrests for criminal conduct, he fails to undercut the defendants' reliance on Wis. Stat. § 800.02(6).

Dwyer does not dispute that Officer Simandl saw Dwyer in possession of alcohol on school grounds, in violation of a municipal ordinance. Thus, there was probable cause to arrest, which forecloses Dwyer's claim. At the very least, the existence of Wis. Stat. § 800.02(6) and *Nelson* means that Simandl is entitled to qualified immunity. *See Abbott*, 705 F.3d at 715 ("[Q]ualified immunity in this context protects officers who reasonably but mistakenly believe that probable cause exists."). Accordingly, Dwyer's false arrest claim will be dismissed.

**2. Improper Search**

Dwyer also contends that Officer Simandl conducted a constitutionally impermissible search of his person because the search allegedly occurred after Dwyer repeatedly refused to consent to search.[1] He concedes, however, that "[a] complete search of an individual may occur without a warrant . . . upon arresting the individual." (Pltf. Resp. at 4.) Indeed, "the Supreme Court [has] reaffirmed the broad scope

---

[1] Dwyer did not present this additional fact in accordance with Civil L.R. 56(b)(2)(B)(ii), so it is not properly before the court. Nevertheless, even if it were, for the reasons set forth below, Dwyer's improper search argument would still fail.

8

of authority the police possess to conduct searches incident to arrest." *Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007) (citing *United States v. Robinson*, 414 U.S. 218 (1973)).

Nevertheless, Dwyer still maintains that the search was invalid because he did not believe that he was under arrest when the search occurred. In support of his argument, Dwyer cites *State v. Doyle*, 291 N.W.2d 545, 550 (Wis. 1980), which sets forth a three-part subjective test for determining when an individual is considered to be under arrest. *Doyle*, however, was abrogated by *State v. Swanson*, 475 N.W.2d 148, 152 (Wis. 1991), which explicitly rejected *Doyle*'s subjective test in favor of an objective test more consistent with United States Supreme Court precedent.[2] *See also Abbott*, 705 F.3d at 719 ("To determine if a seizure, including an arrest, has occurred, courts engage in an objective inquiry that presupposes an innocent person."). So Dwyer's reliance on his subjective beliefs is misplaced.

Indeed, because it is undisputed that Officer Simandl arrested Dwyer shortly after the search—and even a search immediately preceding a lawful arrest is "incident" to that arrest, if probable cause for the arrest arose independently of the items seized, *see Rawlings v. Kentucky,* 448 U.S. 98, 111 (1980)—the only issue is whether Simandl had probable cause to arrest Dwyer at the time of the search. As previously discussed, Simandl indeed had probable cause to arrest Dwyer for violation of two Village ordinances. Accordingly, Dwyer's unlawful search claim will be dismissed.

### 3. Excessive Force

Dwyer also contends that Officer Simandl employed excessive force. "A claim that an officer employed excessive force in arresting a person is evaluated under the Fourth Amendment's objective-reasonableness standard," which "requires courts to balance the nature and quality of the intrusion on the

---

[2] *State v. Sykes*, 695 N.W.2d 277, 286 (Wis. 2005), withdrew certain language from *Swanson* but did not revert to a subjective test.

9

individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Abbott*, 705 F.3d at 724 (internal quotation marks omitted). "In judging the reasonableness of any particular use of force, we consider factors such as the severity of the crime, whether the arrestee poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest or attempting to flee and evade arrest." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Yet, because police officers are often forced to make "split-second judgments," courts must "give considerable leeway to [their] assessments about the appropriate use of force in dangerous situations." *Id.* at 724-25 (internal quotation marks omitted).

Qualified immunity "affords enhanced deference to officers' on-scene judgments about the level of necessary force . . . because, even if the plaintiff[] demonstrate[s] that excessive force was used, [he] must further establish that it was objectively unreasonable for the officer to believe that the force was lawful." *Id.* at 725. "Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Here, Dwyer only asserts that "no reasonable police officer would have used force in this situation." (Pltf. Resp. at 5.)

To repeat, the undisputed facts are that, after deciding to arrest Dwyer for possession of alcohol on school grounds, Officer Simandl handcuffed Dwyer and started to search him. Dwyer protested and began yelling and swearing at Simandl. Simandl attempted to stabilize Dwyer against the squad car and later decided to use a trained takedown technique. Dwyer suffered ripped jeans and skinned knees as a result, but he incurred no medical bills. Simandl did not strike or hit Dwyer, nor did he use any

10

department-issued tools. Once on the ground, Simandl again attempted to stabilize Dwyer by placing one of his knees in Dwyer's shoulder blade region so he could observe the two other people.

In sum, Officer Simandl used a minimal amount of force in response to a minimally dangerous situation. The only dispute concerns the type of resistence that Dwyer was exhibiting. For purposes of this motion, the court must accept Dwyer's account and assume that he was not physically resisting Simandl. Nevertheless, Dwyer's claim still fails because the Seventh Circuit has held that, prior to 2010, it was well-established that "a minimal amount of force may be used on [nonresisting or passively resisting suspects]." *Abbott*, 705 F.3d at 732 (citing *Smith v. Ball State Univ.*, 295 F.3d 763, 766, 770 (7th Cir. 2002)); *see also, e.g.*, *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 843 (7th Cir. 2004) (finding no excessive force when officer grabbed plaintiff's arm and allegedly injured his rotator cuff, where plaintiff refused to comply with requests, was combative and irrationally angry, and may have posed a danger to pedestrians).

"To say that police officers have acted within the bounds that the Constitution sets is not necessarily to say that they have acted wisely." *Bell v. Irwin*, 321 F.3d 637, 641 (7th Cir. 2003). Officer Simandl's actions may well have been an overreaction. Nevertheless, Dwyer has failed to show that the conduct was legally actionable. Accordingly, his excessive force claim will be dismissed.

**B. State Law Claims and Miscellaneous Claims**

The defendants argue that all of Dwyer's state law claims must be dismissed because Dwyer failed to comply with the statutory prerequisites. Wis. Stat. § 893.80(1d) states that, except as provided otherwise:

> no action may be brought or maintained against any . . . governmental subdivision or agency thereof nor against any officer . . . of the . . . subdivision or agency for acts done

11

in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the . . . governmental subdivision or agency and on the officer, official, agent or employee under s. 801.11. . . . ; and

(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant . . . subdivision or agency and the claim is disallowed.

"Failure to comply with the statute constitutes grounds for dismissal of the action." *Casteel v. Vaade*, 481 N.W.2d 476, 479-80 (Wis. 1992); *see also Vanstone v. Town of Delafield*, 530 N.W.2d 16, 19 (Wis. Ct. App. 1995) ("[B]oth provisions must be satisfied before the claimant may commence an action against the governmental entity.").

Here, it is undisputed that, at some point between April 4 and October 4, 2010, Dwyer mailed a document titled "Notice of Injury" to the Village of Shorewood police department. It is also undisputed, however, that he did not serve the Village of Shorewood clerk with an itemized claim for damages. In his response, Dwyer maintains that all statutory requirements have been met but presents no evidence to support this argument. Accordingly, his state law claims will be dismissed. For the sake of completeness, however, the court will address each of the disputed claims in turn.[3]

---

[3] In his response, Dwyer does not address several of his state and miscellaneous claims—namely, assault and battery, false imprisonment, negligent arrest, and destruction of evidence—despite the fact that the defendants advanced reasons for their dismissal. Any argument that these claims are legally viable is therefore waived. *United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005). In any event, there is insufficient evidence in the record to support these claims.

12

### 1. Defamation

Dwyer forcefully argues that Officer Simandl falsified his police report.[4] Under Wisconsin law, the elements of a defamatory communication are: "(1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and, (3) the communication is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *Torgerson v. Journal/Sentinel, Inc.*, 563 N.W.2d 472, 477 (Wis. 1997). The defendants argue, among other things, that Dwyer has presented no evidence that the contents of Simandl's report harmed his reputation.

Dwyer, on the other hand, argues that the report led to an FBI criminal record, a public arrest record, and a failure to obtain a federal job. Unfortunately for Dwyer, the evidence demonstrates otherwise. First, as explained below, Dwyer does not "know for a fact that [the Village] gave something to the FBI," nor does he have evidence supporting his FBI-related claim. Second, as previously discussed, Dwyer has an arrest record because he was legally arrested for his admitted municipal ordinance violations. And third, Dwyer presents no evidence regarding his unidentified federal job. On the contrary, Dwyer testified that he hasn't been viewed differently or denied employment because of the April 4, 2010, incident. Rather, Dwyer obtained his law license from the State of Illinois and has been employed since the incident. Accordingly, Dwyer's defamation claim will be dismissed.

---

[4] Dwyer also argues that Simandl intentionally made false statements under oath to this court, but this allegation clearly lies outside the pleadings. Moreover, any such statements may well be privileged. *See Vultaggio v. Yasko*, 572 N.W.2d 450, 453 (Wis. 1998) ("Where the [defamatory] statements bear a proper relationship to the issues addressed, we have extended the absolute privilege to the statements of parties, witnesses and their counsel in judicial proceedings.").

13

### 2. Improper Reporting to the FBI

Dwyer lastly contends that the Village improperly submitted his arrest record to the FBI. When pressed at his deposition, however, Dwyer admitted that he does not "know for a fact that [the Village] gave something to the FBI," nor does he have evidence supporting this claim. His allegations to the contrary are pure speculation. And even if the Village had forwarded something to the FBI, Dwyer does explain how such actions would have been legally improper. Accordingly, this claim will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion to strike be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this 11th day of June 2013, at Milwaukee, Wisconsin.

                                        **BY THE COURT:**

                                        s/ William E. Callahan, Jr.
                                        WILLIAM E. CALLAHAN, JR.
                                        United States Magistrate Judge